IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON LATIF BROWN, | : | CIVIL ACTION NO. **1:CV-11-1734** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CRAIG A. CULP, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On September 19, 2011, Plaintiff Leon Latif Brown, an inmate at the York County Prison ("YCP") in York, Pennsylvania, filed, *pro se*, this civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff does not challenge any conditions related to his confinement at YCP. Rather, Plaintiff's present constitutional claims occurred on February 10, 2011, when he was in the Franklin House Tavern, located in Hanover Borough, York County, Pennsylvania, for a drink.

Plaintiff also filed two Motions for Leave to Proceed *in forma pauperis*. (Docs. 2 and 5). This Court has jurisdiction over Plaintiff's instant Complaint under 28 U.S.C. §1331 and §1343, and venue is proper since Plaintiff was located within the Middle District of Pennsylvania during the relevant times and all Defendants are located within this District.

**II. Allegations of Complaint.**

　　　　Plaintiff's claims are set forth on a typed, form Complaint.  *See* Doc. 1.   Plaintiff

names the following five (5) Defendants in his Complaint: York County Police Detective Craig A.

Culp; Hanover Borough Police Department; County of York; George Jacobs, Administrator of

the York County Drug Task Force; and Thomas Rielly, Senior Deputy Prosecutor, York County

District Attorney's Office. (Doc. 1, pp. 1-2).  Plaintiff does not indicate if he sues Defendants in

both their official and individual capacities.  (*Id*.).

　　　　Plaintiff avers as follows:

> I came into the Tavern to have a drink [on February 10, 2011], while there
> it seemed a normal atmosphere and then suddenly the front door flung
> open with no regard and police came in running, the first police officer ran
> to me, then turned around stating this isn't him and turned around and went
> to another patron and began the procedure for arresting him, then one of the
> officers who came in second to four others came running straight at me and
> knocked the plaintiff to the ground handcuffed him and pushed him to the
> ground.  After pushing the plaintiff to the ground, the officer began yelling
> curses at the plaintiff and hitting the plaintiff.  The officer then started roughing
> the plaintiff up while handcuffed and on the floor kicking the plaintiff with his
> feet, kneeing the plaintiff in the small of his back and stating to other officers we
> have to take him too, which was for no other apparent cause but to further bring
> harm to the plaintiff, then the officer named in the complaint Culp went to the far
> end of the bar and picked something off of the floor and stated this is going to
> be yours, and rand (sic) up to the plaintiff and literally kicked the plaintiff in the
> face, where the plaintiff suffered contusions and a swollen eye and have been
> suffering from back and head pains since the assault took place, the plaintiff
> claims Cruel and Unusual Punishment, because such barbarous actions while
> the plaintiff was handcuffed where (sic) illegal and fall under the protected
> guidelines of the 8th amendment protecting the plaintiff from cruel and
> unusual punishment.  The plaintiff submits that the actions committed by the
> named defendants who all working as a group under the context of singular
> administration of law who while under color of that law violated the rights of
> the plaintiff and caused him bodily harm with malice and pernicious intent is

the cause for this initial claim being submitted to the United States District
Court today.

(*Id.*, p. 3).

Plaintiff alleges that as a result of the physical force police officers used on him, he
sustained "contusions and chronic pains to his head[,] neck and back." (*Id.*). Plaintiff avers that
he is currently receiving treatment for his injuries and continuous pain at YCP.

As relief, Plaintiff seeks compensatory damages in the amount of $2.5 million against
all Defendants, and punitive damages in the amount of $2.5 million as against all Defendants.[1]

We construe Plaintiff as raising a Fourth Amendment claim against Defendant Culp
for excessive force during his arrest. *See Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 685 (M.D.
Pa. 2010)(excessive force claim against police officer during an arrest is under Fourth
Amendment). Also, Plaintiff raises a Fourth Amendment claim against Defendant York County
under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Further, Plaintiff
appears to raise a §1983 conspiracy claim against Defendants Hanover Borough Police
Department, Jacobs and Rielly.

We now screen Plaintiff's pleading as we are obliged to do under the PLRA. *See
Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.).

---

[1]Plaintiff cannot seek punitive damages against Defendant York County in this §1983
action. The Supreme Court has determined that, absent a statute to the contrary, punitive
damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247, 101 S. Ct. 2748 (1981); *Pirino v. Scranton Police Dept.*, 2005 WL 3006983, *4
(M.D. Pa. 11-9-05)("A municipality may not be held liable for punitive damages under
§1983")(citation omitted).
        Also, as stated below, Plaintiff cannot obtain money damages (both compensatory
and punitive) against the three individual Defendants in their official capacities.

**III. PLRA.**

As stated, Plaintiff filed two applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Docs. 2 and 5). The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[3] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

**IV. Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of*

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[3]The Plaintiff filed two applications to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account. (Docs. 2, 5 and 6).

*Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[4] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009). As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

---

[4]Plaintiff alleges in his pleading that Defendants were state actors and agencies.

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra.*

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

**V. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010),  the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of*

*Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court
instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to
infer more than the mere possibility of misconduct, the complaint has alleged-
but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct.
at 1949. This "plausibility" determination will be "a context-specific task that
requires the reviewing court to draw on its judicial experience and common
sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled
to the same deference as well-pled facts. In other words, "the court is 'not
bound to accept as true a legal conclusion couched as a factual allegation.' "
*Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at
*2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not
precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

## VI. Discussion.

     1.     *Claims for damages against Defendants Culp, Jacobs and Rielly in their official
          capacities*

     As stated above, Plaintiff does not state if he sues the individual Defendants, Culp,

Jacobs and Rielly, in their personal and/or official capacities.  (Doc. 1, pp. 1-2).  We find that,

insofar as Plaintiff seeks monetary damages (both compensatory and punitive) against these

Defendants, he can only sue these Defendants  in their individual or personal capacities. *See Will*

*v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3

(M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).  Thus, we

will recommend that to the extent Plaintiff's claims for compensatory damages are against

Defendants  Culp, Jacobs and Rielly in their official capacities, they should be dismissed.  *See*

*Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);*Gale v. Stori*, 608 F.Supp. 2d

629, 636 (E.D. Pa. 2009).

Plaintiff also cannot seek punitive damages as against Defendants Culp, Jacobs and Rielly in their official capacities.  Plaintiff can only seek punitive damages as against these Defendants in their individual or personal capacities.  *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983).  Thus, Plaintiff's claims for punitive damages against Defendants Culp, Jacobs and Rielly in their official capacities should be dismissed.

Further, Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 4) should be stricken.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

*2. Defendant Hanover Police Department*

Plaintiff names both York County and Hanover Borough Police Department as Defendants.  Plaintiff states that he names Hanover Borough Police Department as a Defendant and that it is under the authority of the Mayor of York County and governmental directors of York County.  (Doc. 1, p. 2).

We find that the Hanover Borough Police Department as a municipal police department is not a proper Defendant in a §1983 action.  *See Padilla v. Township of Cherry Hill*, 110 Fed.Appx. 272 (3d Cir. 2004).  In *Retzler v. Bristol Tp.*, 2009 WL 691993, *3 (E.D. Pa. 3-11-09), the Court stated:

> A local police department may not be sued along with its municipality because the police department is not a separate legal entity. *See Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir.2004) ("In Section 1983 actions, police departments cannot be sued in conjunction with

municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."); *see also Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 n. 4 (3d Cir.1997); 2d 595, 599 (E.D.Pa.2002) (dismissing Bristol Township Police Department because it cannot be sued alongside Bristol Township).

The Court in *Retzler v. Bristol Tp.,* 2009 WL 691993, *3, also stated:

The Bristol Township Police Department is not a proper party to this lawsuit. A local police department may not sued along with its municipality because the police department is not a separate legal entity. *See Padilla,* 110 F. App'x at 278; *see also Bonenberger,* 132 F.3d at 25 n. 4; *Toth,* 215 F.Supp.2d at 599 (E.D.Pa.2002). The case against the Bristol Township Police Department is therefore dismissed.

As stated, Plaintiff has named both Hanover Borough Police Department and York County as Defendants in this case.  Plaintiff states that York County was "responsible for the reckless actions of the police." (*Id.*).  As such, Plaintiff's case as against Hanover Borough Police Department should be dismissed.  *Id.*; *Pirino v. Scranton Police Dept.*, 2005 WL 3006983, *3 (M.D. Pa. 11-9-05)("police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.") citing *Padilla v. Township of Cherry Hill*, 110 Fed.Appx. 272, 278 (3d Cir. 2004); *Draper v. Darby Tp. Police Dept.*, 777 F.Supp. 2d 850, 856 (E.D. Pa. 2011)(Court held that "Darby Police Department is not a 'person' subject to suit in a §1983 civil rights action because it lacks an identity separate from the municipality of which it is a part.") citations omitted.

Thus, we will recommend that Defendant Hanover Borough Police Department be dismissed with prejudice.[5]

_____

[5]We note that Plaintiff has not named Hanover Borough as a Defendant.  Nor does Plaintiff state a claim against Hanover Borough under *Monell*.  Further, we construe Plaintiff as

*3. Section 1983 Conspiracy Claim*

As quoted above, Plaintiff simply alleges that "the actions committed by the named Defendants who all working as a group under the context of singular administration of law ... violated the rights of the Plaintiff and caused him bodily harm with malice ... ." (Doc. 1, p. 3). We find that Plaintiff has failed to state a cognizable conspiracy claim against Defendants under §1983.

We find that Plaintiff's bare conclusory allegations of a § 1983 conspiracy against Defendants are inadequate to state a cognizable conspiracy claim. *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Id*. at 928.

As the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law. *Adickes v S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead,*

---

alleging that the Hanover Borough Police Department and its police officers were part of the York County Drug Task Force, and that they were acting as part of the Drug Task Force on February 10, 2011.

110 F.Supp.2d 361, 371 (E.D. Pa. 2000).  Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).  "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id*. (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

We find that Plaintiff does not specify any role or agreement of Defendants in the alleged conspiracy to violate Plaintiff's constitutional rights on February 10, 2011, in Franklin House Tavern.  Plaintiff fails to allege what Defendants specifically conspired to do, or what specific actions these Defendants took in furtherance of the alleged conspiracy to cause him bodily harm.

Thus, we will recommend that Plaintiff's §1983 conspiracy claim against all Defendants be dismissed without prejudice.

### 4.  Defendants Jacobs and Rielly

Plaintiff states that Defendant Jacobs, as the Administrator of the York County Drug Task Force, "is the direct cause and as well (sic) supporter of the polices (sic) actions which is the direct harm manifested against the Plaintiff in this matter."  (Doc. 1, p. 2).  Plaintiff states that Defendant Rielly is the Senior Deputy District Attorney of York County and that this Defendant "supported the actions of the police who while handcuffed physically abused [Plaintiff], for which [Defendant Rielly's] responsibility being the cornerstone orchestrating the actions against the Plaintiff."  (*Id*.).

11

We find that Plaintiff has impermissibly named Jacobs and Rielly as Defendants only based on *respondeat superior*. Plaintiff does not allege that Jaocbs and Rielly were present in the Tavern on February 10, 2011, and he does not state the personal involvement of these two Defendants with respect to his Fourth Amendment excessive force claim. Nor does Plaintiff state that Defendants Jacobs and Rielly directed police officers to assault him on February 10, 2011, or that these Defendants knew police officers were going to cause Plaintiff bodily harm.

Plaintiff cannot name Defendants in this § 1983 civil rights action based solely on *respondeat superior,* as he is attempting to do with respect to Defendants Jacobs and Rielly.[6]  *See Wallace v. Bledsoe*, 2010 WL 1565578 (M.D. Pa.); *Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which

---

[6]It is well settled that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See Ascenzi v. Diaz,* 2007 WL 1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the §1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

Plaintiff's claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in such an action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill*, 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that the Plaintiff has specifically stated the personal involvement of Defendants Jacobs and Rielly with respect to his Fourth Amendment excessive force claim against Detective Culp.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.* "); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v. Warminister Tp.,* 2010 WL 5071779, * 5 (3d Cir. Dec. 14, 2010); *Sims v. Piazza,* 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

In his Complaint, Plaintiff does not allege any type of personal involvement by Defendants Jacobs and Rielly in relation to his excessive force claim.  Plaintiff merely avers that these two Defendants are involved since they were supervisors of the York County Task Force and since they supported the actions of the police. (Doc. 1, p. 2).

Based upon our review of the Complaint, we do not find that supervisory Defendants Jacobs and Rielly are sufficiently alleged to be personally involved in Plaintiff's constitutional claim. Therefore, we shall recommend that supervisory Defendants Jacobs and Rielly be dismissed without prejudice for lack of personal involvement.  *See Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).[7]

---

[7]We note that Defendant Rielly may also be entitled to prosecutorial immunity with respect to Plaintiff's instant claims for damages insofar as  Plaintiff's present case is based on Rielly's performance of his official duties as a Deputy District Attorney in prosecuting Plaintiff. To this extent, Plaintiff's case against Defendant Rielly may be precluded by absolute prosecutorial immunity.  *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa.  2007); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Radocesky v. Munley*, 247 Fed. Appx. 363, 365 (3d Cir.

5.  *Defendant York County*

We find that Plaintiff raises no cognizable claim under § 1983 against Defendant York County.  While Plaintiff names York County as a Defendant in his Complaint and he asserts that this Defendant was responsible for the actions of the police, he does not sufficiently state a Fourth Amendment claim against this Defendant under *Monell*.  *See Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.).

As mentioned, Plaintiff has named  York County as a Defendant  pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978).  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008); *Basile v. Twp. of Smith*, 2010 WL 4687787, *13.  Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies."  *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.);  *Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F.Supp.2d 566 (E.D. Pa. 2009).

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

*Id.*

---

2007)("The decision whether or not to initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely immunized from a suit for damages.")citing *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Gregg v. Pettit*, 2009 WL 57118, *4 (W. D. Pa.).

We find that Plaintiff has not properly stated a municipal liability claim under *Monell* against Defendant York County with respect to his stated Fourth Amendment claim.

Defendant York County cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior* as Plaintiff clearly attempts to do in this case with respect to his Fourth Amendment claim. *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. Rather, "[Defendant York County is] subject to liability to the extent [it] maintain[s] an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citation omitted). As indicated above, no such custom or policy is specifically alleged by Plaintiff with respect to Defendant York County.

Plaintiff does not allege that Defendant York County had policies to deprive its residents of their Fourth Amendment rights by permitting its police and the police in its Task Force to illegally use excessive force during arrests. Nor does Plaintiff allege that Defendant York County failed to train police in its Task Force how to properly make arrests and what force to use.

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its
> employees under § 1983 based upon *respondeat superior*.
> *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978). However, "the government as an
> entity is responsible under § 1983" when it "caused" the Plaintiff's
> injury; that is, "when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or acts
> may fairly be said to represent official policy, inflicts the injury."
> *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that
> the flawed policy is a failure to train, the municipality can be held
> liable when "'that failure amounts to "deliberate indifference . . .
> [to the constitutional rights of persons with whom the police come
> in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324
> (3d Cir. 2005) (citations omitted). There must also be a causal

nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id*. at 325 (citations omitted).

To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiff does not make any allegations as described above against Defendant York County necessary to make it subject to municipality liability in a § 1983 action. Plaintiff does not allege any causal nexus between an identifiable policy and his alleged constitutional injuries. We find that Plaintiff has not sufficiently stated a claim under *Monell* against Defendant York County. Based on *Kokinda, Meyers*, and *Malles*, as well as *Mueller v. Centre County*, 2009 WL 4912305, we find Plaintiff's allegations do not sufficiently state that Defendant York County caused any alleged conduct of the individual police officers on February 10, 2011, by having customs, policies, practices and procedures, and how these policies gave rise to the constitutional violations under the Fourth Amendment alleged in the Complaint

Therefore, we will recommend that Defendant York County be dismissed without prejudice.

### 6.  *Defendant Detective Culp*

Plaintiff asserts a Fourth Amendment excessive force claim against Defendant Detective Culp regarding Culp's conduct on February 10, 2011. The standard governing excessive force claims in the course of an arrest, investigatory stop or other type of seizure as specified by

the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989). Pursuant to *Graham*, excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. *Id.* We disagree with Plaintiff that his claim alleging excessive force was utilized by Defendant Culp at the Tavern during his arrest falls under the Eighth Amendment. Rather, we find that Plaintiff's claim against Defendant Culp falls under the Fourth Amendment, which protects against unreasonable seizures. Thus, Plaintiff's excessive force claim must be considered under the Fourth Amendment's reasonableness standard.

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004); *Mitchell v. Luckenbill*, 680 F. Supp. 2d at 685. A seizure of the plaintiff occurs "[w]henever an officer restrains the freedom of [the plaintiff] to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694 (1985); *Mitchell v. Luckenbill*, 680 F. Supp. 2d at 685. "The use of excessive force is itself an unlawful seizure under the Fourth Amendment." *McNeil v. City of Easton*, 694 F. Supp. 2d at 392.

In *Mitchell v. Luckenbill*, 680 F. Supp. 2d at 685-686, the Court stated:

> "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.' " *United States v. Brown,* 448 F.3d 239, 245 (3d Cir.2006) *686 (quoting *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). "Put another way, when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force." *Id.* "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Kopec,* 361 F.3d at 776 (quoting *Graham,*

490 U.S. at 397, 109 S.Ct. 1865).
"In assessing the reasonableness of the officers' actions," courts must "account for the fact that [officers] must make 'split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary.' " *Kubicki v. Whitemarsh Twp.,* 270 Fed.Appx. 127, 129 (3d Cir.2008) (quoting *Couden,* 446 F.3d at 493). " 'Reasonableness under the Fourth Amendment should frequently remain a question for the jury,' however, 'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of t' " *Kopec,* 361 F.3d at 777 (quoting *Abraham,* 183 F.3d at 290).

We find that Plaintiff has alleged that the force used against him  by Defendant Culp in the Tavern was not objectively reasonable.  *See McNeil v. City of Easton*, 694 F. Supp. 2d at 392.

The Third Circuit in *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004)[8], stated:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are often tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances" facing the officer, regardless of the officer's intent or motivation. *Id.* at 397, 109 S.Ct. 1865.

In the context of a §1983 claim, as we are presented with in this case, there is a three-part test to be applied in determining the reasonableness of the force which was used. The following factors are to be considered:

---

[8]*Rivas* is also found at 2004 WL 877645.

1. "the severity of the crime at issue;"

2. "whether the suspect poses an immediate threat to the safety of the officers or others;" and

3. "whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight. "

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1867; *McNeil v. City of Easton*, 694 F. Supp. 2d at 392.

The *Rivas* Court stated that:

> Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). The reasonableness of the use of force is normally an issue for the jury. *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). While some courts "freeze the time frame" and consider only the facts and circumstances at the precise moment that excessive force is applied, other courts, including this one, have considered all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force. *See, e.g., Abraham*, 183 F.3d at 291.

*Rivas*, 365 F.3d at 198; *McNeil v. City of Easton*, 694 F. Supp. 2d at 392.

Careful attention to the facts and circumstances of each particular case must be given, including the aforementioned three factors. *Graham,* 490 U.S. at 396; *McNeil v. City of Easton*, 694 F. Supp. 2d at 392. The *Mitchell* Court stated that "[t]he Supreme Court has noted that 'not every push or shove' violates the Fourth Amendment and that the right to use a certain degree of force must be analyzed in light of the 'facts and circumstances of each particular case ... .'" 680 F. Supp. 2d at 686 (citations omitted).

Based on the above quoted allegations, we find that Plaintiff has stated a cognizable excessive force claim against Defendant Culp since he avers that Culp kicked him in the face as he lay on the floor of the Tavern handcuffed.

## VI.  Recommendation.

Based on the above, it is respectfully recommended that all of Plaintiff Brown's claims for monetary damages, both compensatory and punitive, against Defendants in their official capacities be dismissed with prejudice.  It is also recommended that Plaintiff's claims for punitive damages  against Defendant York County be dismissed with prejudice.  Further, it is recommended that Plaintiff's conspiracy claim under §1983 against Defendants be dismissed without prejudice.  Additionally, it is recommended that Defendant York County be dismissed without prejudice.  Further, it is recommended that Defendant Hanover Borough Police Department be dismissed with prejudice.

Moreover, it is recommended that supervisory Defendants Jacobs and Rielly be dismissed without prejudice for lack of personal involvement.  It is also recommended that Plaintiff's Fourth Amendment excessive force claim against Defendant Culp be allowed to proceed.

Finally, we recommend that Plaintiff's *in forma pauperis* motions (Docs. 2 and 5) be granted, and that this case be remanded to the undersigned for further proceedings.


                                        **s/ Thomas M. Blewitt**_____
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: October 7 , 2011**

21

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON LATIF BROWN,                    :        CIVIL ACTION NO. **1:CV-11-1734**
                                     :
            Plaintiff               :        (Judge Conner)
                                     :
            v.                       :        (Magistrate Judge Blewitt)
                                     :
CRAIG A. CULP, et al.,               :
                                     :
            Defendants              :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 7, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                  **s/ Thomas M. Blewitt**
                                  **THOMAS M. BLEWITT**
                                  **United States Magistrate Judge**

**Dated: October 7, 2011**