# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON LATIF BROWN, | : | CIVIL ACTION NO. 1:CV-11-1734 |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| CRAIG A. CULP, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

### I. BACKGROUND.

On September 19, 2011, Plaintiff Leon Latif Brown, formerly an inmate at the York County Prison ("YCP") in York, Pennsylvania, filed, *pro se*, this civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff did not challenge any conditions related to his confinement at YCP. Rather, Plaintiff's present constitutional claims occurred on February 10, 2011, when he was a patron in the Franklin House Tavern, located in Hanover Borough, York County, Pennsylvania. Plaintiff is now confined at SCI-Mahanoy, Frackville, PA.

Plaintiff also filed two Motions for Leave to Proceed *in forma pauperis*. (Docs. 2 and 5). Plaintiff's first Motion for Leave to Proceed *in forma pauperis* was not on the proper form. This Court has jurisdiction over Plaintiff's instant Complaint under 28 U.S.C. §1331 and §1343, and venue is proper because Plaintiff was located within the Middle District of Pennsylvania during the relevant times and all Defendants were located within this District.

On October 7, 2011, we screened Plaintiff 's Complaint pursuant to the Prison Litigation

Reform Act of 1995 ("PLRA") and issued a Report and Recommendation. (Doc. 8). We recommended the following: (1) dismissal with prejudice for all of Plaintiff Brown's claims for monetary damages, both compensatory and punitive, against Defendants in their official capacities; (2) dismissal with prejudice of Plaintiff's claims for punitive damages against Defendant York County; (3) dismissal without prejudice of Plaintiff's conspiracy claim under §1983 against the individual Defendants; (4) dismissal without prejudice of Defendants York County, Jacobs and Rielly; (5) dismissal with prejudice of Defendant Hanover Borough Police Department; and (6) Plaintiff's Fourth Amendment excessive force claim against Defendant Culp be allowed to proceed. Finally, we recommended that Plaintiff's *in forma pauperis* motions (Docs. 2 and 5) be granted, and that this case be remanded to the undersigned for further proceedings.

On October 25, 2011, the Court issued an Order rejecting our Report and Recommendation because it failed to address whether Plaintiff should be permitted leave to amend his Complaint. (Doc. 9).

On October 27, 2011, we issued a second Report and Recommendation, reiterating our prior Report and Recommendation, and recommending that Plaintiff be granted permission to amend his Complaint with respect to his conspiracy claim under §1983 against Defendants Jacobs, Rielly and Culp and, with respect to his municipal liability claim under *Monell* against Defendant York County as there would be no bad faith, undue delay, prejudice or futility if Plaintiff amended his stated claims. (Doc. 10). We also recommended that Plaintiff's Fourth Amendment excessive force claim against Defendant Culp be allowed to proceed, that Plaintiff's *in forma pauperis* motions (Docs. 2 and 5) be granted, and that this case be remanded to the undersigned for further

proceedings. (Doc. 10).

On November 30, 2011, the Court issued an Order adopting our Doc. 10 Report and Recommendation in its entirety, allowing Plaintiff's Fourth Amendment excessive force claim against Defendant Culp to proceed, granting Plaintiff twenty-one (21) days from the Order date to file an Amended Complaint with respect to the above stated claims dismissed without prejudice, and remanding the matter to the undersigned for further proceedings. (Doc. 11).

On December 1, 2011, Defendant Hanover Borough Police Department was terminated from the suit. On January 3, 2012, since Plaintiff failed to timely file an amended Complaint, we issued an Order (Doc. 12) directing service of Plaintiff 's original Complaint (Doc. 1) on the remaining Defendants.

On January 13, 2012, Defendants County of York, George Jacobs, and Thomas Reilly filed their Motion to Dismiss (Doc. 14) and their Brief in Support (Doc. 15) of this Motion. On February 1, 2012, we issued an Order directing Plaintiff to file a Brief in Opposition to Defendants' Motion to Dismiss by February 23, 2012, and stated that failure by Plaintiff to do so would result in a recommendation of dismissal of his case. (Doc. 21).

On February 24, 2012, Defendant Craig Culp filed his Motion to Dismiss for Failure to State a Claim (Doc. 22) and Brief in Support (Doc. 23) of this Motion.

On March 20, 2012, we issued an Order directing Plaintiff to file a Brief in Opposition to both Motions to Dismiss (Docs. 14 and 22) by April 9, 2012, stating that his failure to do so would result in a recommendation that the motions being deemed unopposed and that the Court grant Defendants' Motions without a merit analysis. (Doc. 26).

On April 6, 2012, Plaintiff filed a Motion to Amend/ Correct his Complaint. (Doc. 28). On April 9, 2012, Plaintiff filed a Brief in Opposition to Defendants' Motions to Dismiss. (Doc. 29). On April 10, 2012, Plaintiff filed a Motion for Appointment of Counsel, which we denied on April 13, 2012. (Docs. 30 and 31, respectively). On April 18, 2012, Defendant Culp filed a Reply Brief to Plaintiff's Brief in Opposition to his (Culp's) Motion to Dismiss. (Doc. 32).

On June 6, 2012, we deemed Plaintiff's Document 28 Motion for Leave to Amend/Correct his Complaint as withdrawn because Plaintiff failed to file a Brief in Support in accordance with Middle District of Pennsylvania Local Rule 7.5. Plaintiff also failed to file a Proposed Amended Complaint in accordance with Middle District of Pennsylvania Local Rule 15.1.

On June 7, 2012, we issued a R&R in which we recommended that the Court grant Defendants York County, Jacobs, and Rielly's Motion to Dismiss, and dismiss with prejudice all Plaintiffs claims against these Defendants. Further, we recommended that the Court grant Defendant Culp's Motion to Dismiss as to the conspiracy and *Monell* claims, but deny Culp's Motion as to the Fourth Amendment excessive force claim against him. (Doc. 34). On September 10, 2012, the District Court issued an Order adopting our R&R in full. (Doc. 36).

Thus, the only remaining Defendant was Defendant Culp, and the only remaining claim was Plaintiff's Fourth Amendment excessive force claim. On September 14, 2012, Defendant Culp filed an Answer to Plaintiff 's Complaint with Affirmative Defenses. (Doc. 38).

We then issued an Order and set the discovery deadline as March 1, 2013, and the dispositive motion deadline as April 1, 2013. (Doc. 40).

After time for discovery, Defendant Culp filed a Motion for Summary Judgment **(Doc. 41)**,

along with a Brief in Support (Doc. 42), and a Statement of Material Facts ("SMF") (Doc. 44), on March 27, 2013. Defendant Culp attached Exhibits to his Motion. On June 3, 2013, Plaintiff filed his 3-page Brief in Opposition to Defendant's Motion for Summary Judgment. (Doc. 48). Plaintiff failed to file his paragraph-by-paragraph response to Defendant's SMF as required by Local Rule 56.1, M.D. Pa. Nor did Plaintiff submit any Exhibits. On June 12, 2013, Defendant filed a Reply Brief and an additional Exhibit, namely a booking photo of Plaintiff at the time of his arrest on February 11, 2011 at 3:44 a.m. (Docs. 50 & 51).

As such, the Defendant's Doc. 41 Motion is now ripe for review.

## II. FACTUAL BACKGROUND.

We will limit or discussion of the factual background of the instant case to only those facts material to the remaining single Fourth Amendment excessive force claim against Defendant Culp. Plaintiff alleges that on the night of February 10, 2011, he was having a drink as a patron of a tavern. He further alleges that the "police came running in," and began to arrest another patron of the tavern. (Doc. 1, p. 2). Plaintiff alleges that during this arrest, the police also began to detain him, and handcuffed him on the floor. (Id.). At some point, Plaintiff claims that while he was handcuffed on the ground, Defendant Culp kicked him in the face, causing him to "suffer contusions and a swollen eye and...back and head pains sine the assault took place." (Id.). Plaintiff alleges that the conduct of Defendant Culp constitutes an excessive use of force, in violation of his Fourth Amendment rights.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as

true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

IV.    **STATEMENT OF MATERIAL FACTS.**

As stated, Defendant properly filed his Statement of Material Facts ("SMF") in support of his Summary Judgment Motion with citation to his evidence as required by Local Rule 56.1, M.D. Pa. (Doc. 44). Defendant states that his SMF and undisputed evidence shows that he did not violate Plaintiff's Fourth Amendment rights. Also, Defendant submitted Exhibits with his Motion to support each one of his contentions. (Doc. 41, Exhibits 1-11). As stated, Defendant also submitted Plaintiff's photo when he was booked by police on February 11, 2011, after his arrest which does not show any injuries on Plaintiff's face or front area of his head. (Doc. 51). Plaintiff, however, failed to file a proper paragraph-by-paragraph response to Defendant's SMF as required. Additionally, Plaintiff filed a Brief in Opposition to the Defendant's Motion for Summary Judgment with only two pages of discussion. (Doc. 48). Plaintiff's Document 48 filing, however, does not include a proper paragraph-by-paragraph response to all paragraphs of the Defendant's SMF, as required by Local Rule 56.1, M.D. Pa. Further, Plaintiff failed to submit any evidence to support his contentions that Defendant violated his Fourth Amendment rights.

Since Defendant has properly filed his SMF in support of his Summary Judgment Motion, as required by Local Rule 56.1, M.D. Pa., and his facts in his paragraphs 1-24 are properly supported

7

by citation to the evidence, and since Plaintiff failed to properly respond to Defendant's SMF, we shall accept all of Defendant's facts contained in his SMF. Further, as stated, none of the Defendant's facts in his SMF are properly disputed by the Plaintiff with citation to evidence. Thus we find that Plaintiff has not properly responded to Defendant's SMF as required by Local Rule 56.1, M.D.Pa. *See* Local Rules M.D. Pa., 56.1; *see also Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates*, 39 F. Supp.2d 517 (M.D. Pa. 1999).

Defendant states in his SMF that on February 10, 2011, the York County Drug Task Force conducted a narcotics investigation at the Franklin House Tavern, 300 North Franklin Street, Hanover, Pennsylvania, which identified Roderick Mitchner and Plaintiff Leon Brown as persons possessing and selling crack cocaine.[1] (Doc. 44, ¶'s 1-2). As the Drug Task Force entered the Tavern on February 10, 2011, they identified and began to arrest Roderick Mitchner, at which time Plaintiff Leon Brown began to move away from the bar and attempted to flee through the back of the building. (Id. at ¶'s 3-9). As Plaintiff fled, Trooper Wolfe states in his Affidavit, that he observed Plaintiff dispose of a plastic bag which was later identified to be twenty six (26) individual ziplock bags containing crack cocaine. (Id. at ¶ 10; Doc. 41-6, Exhibit "F"). Trooper Keppel also saw Plaintiff throw a bag which contained about 26 ziplock baggies onto the floor of the Tavern. (Id. at ¶ 13). Plaintiff was then placed on the floor and handcuffed by two of the police officers. (Id. at ¶ 14).

---

[1]Since Defendant properly cites to his Exhibits attached to his Doc. 41 Motion in his SMF with respect to each one of his paragraphs, we do not repeat herein all of the cites to Defendant's Exhibits. Also, as stated, Defendant's evidence is not disputed by Plaintiff.

Defendant Detective Culp of the Hanover Borough Police Department was involved in the investigation at the Tavern, however, he was not involved in the handcuffing of Plaintiff. (Doc. 44 at ¶ 15). As Defendant Culp states in his Affidavit, "[m]y participation upon entering the Franklin House Tavern included securing the Franklin House Tavern as other officers had already arrested Messrs. Mitchner and Brown." (Doc. 41-1, Ex. A).

Plaintiff's booking photograph was taken approximately five hours after his arrest and after the alleged assault by Defendant Culp, *i.e.*, at 3:11 a.m. on February 11, 2011. As mentioned, Plaintiff's booking photograph shows that he had no injures to his face and front area of his head, as he claimed he did in his Complaint. (Id. at ¶'s 16-17 & Doc. 51). Also, we agree with Defendant (Doc. 50) that Plaintiff's booking photograph does not show any disfigurement to Plaintiff 's face as Plaintiff contends. In fact, the only wound observed on the Plaintiff was on his right eyelid, not his left as he alleged, and, at the direction of Defendant Culp, Plaintiff received treatment for that wound at Hanover Hospital prior to his incarceration. (Id. at ¶ 23).

Defendant's evidence also shows that Defendant Culp did not kick Plaintiff in his head, face or his body. (Id. at ¶ 18). Also, Defendant's undisputed evidence shows that Defendant Culp did not use excessive force on Plaintiff during and after Plaintiff 's arrest. (Id. at ¶ 19).

Thus, Defendant's evidence shows that at no time did he assault Plaintiff, and that, at all times he followed proper procedure in affording Plaintiff his full constitutional rights. (Id. at ¶'s 19-23). In a sworn Affidavit, Detective Craig Fenstermacher of the Hanover Police states, "I have worked with Detective Culp, as part of the York County Drug Task Force, and know him to be of high moral character and to always act professionally within the law while executing his official

9

duties." (Doc. 41-2, Ex. B). Further, five other officers involved in the Plaintiff's arrest provided verbatim statements in their sworn Affidavits. (Doc. 41-2. Ex's. A-G).

As a result of the Drug Task Force's investigation at the Tavern, Plaintiff was charged and pled guilty to possessing crack cocaine with the intent to deliver, and he was sentenced in the Court of Common Pleas of York County to a term of no less than five but no greater than ten years confinement.[2] (Id. at ¶ 24; Doc. 41-11, Ex. K).

As part of discovery in this case, Defendant deposed Plaintiff on December 20, 2012. (Doc. 41-8, Ex. H). Plaintiff admitted that he was sentenced to a prison term of 5-10 years as a result of his arrest on drug charges stemming from the February 10, 2011 incident. Plaintiff testified that after police officers grabbed him, took him down to the floor and handcuffed him behind his back, Defendant Culp came at him full speed and kicked him (with the tip of Culp's boot) in the face. Plaintiff stated that Defendant Culp's boot hit his forehead first and then slid down. As a result, Plaintiff stated that he felt "a little unconscious at the time" and that his fact was "real ... disfigured." Plaintiff also stated that his face was throbbing and hurting. Plaintiff then stated that a State Trooper directed other officers to take him to Hanover Hospital. Plaintiff testified that at the hospital, he was treated with ice and pain medication for contusions to the left side of his face and internal bleeding in his face which were caused by Culp's kick. Plaintiff stated that his left eye was swollen shut, that he could not see out his left eye since it was closed shut, and he had a minor cut above

---

[2]We take judicial notice of Plaintiff 's York County Court Criminal Docket No. CP-67-CR-0001559-2011, *Commonwealth of Pennsylvania v. Leon Latif Brown*, in which Plaintiff was convicted of possession with intent to deliver of crack cocaine, which can be found at www.ujsportal.pacourts.us.

his left eye. Also, Plaintiff stated that his fact was "really swollen, like, disfigured." Plaintiff stated that he was not bleeding externally on his face but that he had black and blue and red marks on his skin. Further, Plaintiff stated that after the kicking incident with Defendant Culp, he suffered from headaches and migraines and took pain medication for his conditions, such as Motrin and Tylenol. (Doc. 41-11, Ex. K).

Plaintiff testified that the police claimed they had video footage of the incident in the Tavern on February 10, 2011, including the alleged kicking incident with Defendant Culp but that he never saw it. (Doc. 41-11, Ex. K).

Plaintiff further stated that he knew Defendant Culp from a prior incident in the Tavern (3 weeks to a month before the February 10, 2011 incident) during which Culp was trying to conduct a sting involving Plaintiff selling drugs. Plaintiff stated that he did not sell any drugs during the prior incident and that Defendant Culp could not arrest him at that time. Plaintiff avers that Defendant Culp told him on that prior occasion that "he was gonna get me." (Doc. 41-11, Ex. K). Plaintiff stated that he interpreted Defendant Culp's alleged comment to mean that Culp was going to arrest him eventually for selling drugs. (Doc. 41-11, Ex. K).

V. **DISCUSSION.**

The standard governing excessive force claims in the course of an arrest, investigatory stop or other type of seizure is specified by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989). Pursuant to *Graham*, excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. *Id*. Thus, because Plaintiff's claim arose while he was being arrested, Plaintiff's excessive force claim against Defendant Culp must be

considered under the Fourth Amendment's reasonableness standard.

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable. *Curley v. Klem*, 298 F.3d 271, 279 (3d. Cir. 2002); *Rivas v. City of Passaic*, 365 F.3d 181 (3d. Cir. 2004). A seizure of the plaintiff occurs "[w]henever an officer restrains the freedom of [the plaintiff] to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694 (1985).

In the present case, as discussed, Plaintiff alleges that a seizure of his person occurred on February 10, 2011, as he was handcuffed in the Tavern by officers of the Drug Task Force, and therefore not free to walk away. (Doc. 1, p. 2). Defendant Culp was not one of the officers who arrested Plaintiff. As stated, Plaintiff testified that after police officers grabbed him, took him down to the floor in the Tavern and handcuffed him behind his back, Defendant Culp came at him full speed and kicked him (with the tip of Culp's boot) in the face. Plaintiff testified that his face was disfigured as a result of Culp's kick and that his left eye was swollen shut. Defendant's evidence shows that Defendant Culp did not kick Plaintiff in his head, face or his body, and that Defendant Culp did not use excessive force on Plaintiff during and after Plaintiff 's arrest. Because Plaintiff's claim arises in the context of his arrest, however, we will address the remaining issues of whether the force used on Plaintiff during his seizure was unreasonable.

The Third Circuit in *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) stated:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are often tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in

a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances" facing the officer, regardless of the officer's intent or motivation. *Id.* at 397, 109 S.Ct. 1865.

In the context of a §1983 claim, as we are presented with in this case, there is a three-part test to be applied in determining the reasonableness of the force which was used. The following factors are to be considered:

1. "the severity of the crime at issue;"

2. "whether the suspect poses an immediate threat to the safety of the officers or others;" and

3. "whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight. "

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1867.

The *Rivas* Court stated that:

> Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). The reasonableness of the use of force is normally an issue for the jury. *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). While some courts "freeze the time frame" and consider only the facts and circumstances at the precise moment that excessive force is applied, other courts, including this one, have considered all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force. *See, e.g., Abraham*, 183 F.3d at 291.

*Rivas*, 365 F.3d at 198.

13

Careful attention to the facts and circumstances of each particular case must be given, including the aforementioned three factors. *Graham,* 490 U.S. at 396. In analyzing these three factors in relation to the aforementioned facts, we find that Plaintiff has not established through the undisputed evidence his Fourth Amendment excessive force claim against Defendant Culp. Plaintiff has not shown the personal involvement of Defendant Culp as to his seizure. Rather, he testified that Defendant Culp assaulted him while he was handcuffed behind his back while he was laying on the floor of the Tavern. In his deposition, Plaintiff testified that after he was laying on the floor with his hands cuffed behind his back (Doc. 41-8, Exhibit "H", p. 25):

> A: I remember looking face up while I was down on the floor, and I remember seeing Culp come in right after that and come straight at me and kick me with his boot in the face – full speed.

Plaintiff stated that Defendant Culp kicked him once. Plaintiff, however, has failed to provide any other evidence to substantiate his testimony as to Defendant Culp's actions, or to contest the Defendant's SMF which show that Defendant Culp did not assault Plaintiff. Defendant's overwhelming evidence, detailed above, shows that he did not kick Plaintiff and that Plaintiff did not have any injuries to his face. In fact, Plaintiff 's left eye was not swollen and his face was not "disfigured." (Doc. 51). In his Deposition, Plaintiff also describes how he had to be taken to the hospital as a result of his injuries. (Doc. 41-8, Exhibit "H", p. 29). Plaintiff stated:

> Q: Obviously, you're an African American male. Could you see black and blues or red marks on your skin at all?
> A: Yes.
> Q: Okay. Which? Could you see both black and blue and red marks on your skin?
> A: Black and blue; red.

Plaintiff further asserts in his opposition Brief that, "The Defendant's counsel has admitted the picture of the Plaintiff, which shows clearly the disfigurement of the Plaintiff's head and face." (Doc. 48). Insofar as Plaintiff refers to Exhibit "I" to Defendant's Motion, Doc. 51, we find that the booking photograph of Plaintiff does not depict,"excessive swelling and bruising of the eyes and face area," nor any discolorations, or any discernible injuries to the Plaintiff's head or face, and as such, does not serve as evidence to support Plaintiff's claim. Furthermore, Plaintiff stated in his deposition (Doc. 41-8, Exhibit "G", p. 36):

> Q: Okay. And can you describe the swelling for me? Was the eye – was the eye swollen shut?
> A: It was. It was – it was shut, and I think there was a minor cut above the [left] eye. And my eye was real – like, really out there. Like, you know, like it was – my face was, like, really swollen, like disfigured.

Again, we find that Defendant's undisputed Exhibit "I", the Plaintiff's booking photo, does not corroborate such injuries as alleged by Plaintiff. Even considering the time passed from the initial arrest to the photograph taken on February 11, 2011, at 3:11 a.m., we find that such gross injuries, as Plaintiff describes, would have been present in the photograph if true. Further, we note that Defendant submits as Exhibit "J", the Plaintiff's medical record following his treatment at Hanover Hospital in the early morning immediately after his arrest on February 10, 2011. (Doc. 41-10, Exhibit "J"). This medical record makes no mention of any severe eye swelling or severe bleeding to Plaintiff. In fact, the record only makes a general reference to contusions/bruising. Plaintiff was medically cleared for incarceration. Plaintiff was not referred for any follow up care. Plaintiff was not prescribed any medication. (Id.). Plaintiff did not submit any records or documents to corroborate his alleged extensive injuries to which he testified existed. On the

contrary, we find that Defendant has submitted documents and evidence which show that Plaintiff did not suffer any discernable injuries during and after his arrest, *i.e.* medical document, Affidavits, and Plaintiff 's booking photograph. Further, we find that Defendant's undisputed evidence shows that Defendant did not use excessive force on Plaintiff on February 10, 2011 in the Tavern.

In his Brief in Opposition, Plaintiff states, "[t]he defendant's counsel has admitted evidence videotape recording of the incident in question, of the physical brutality Detective Culp displayed on the Plaintiff with a kick to the head and face." (Doc. 48, p. 2). As indicated, Plaintiff testified in his deposition that the incident in the Tavern was videotaped by police but that he never saw the video. Despite these statements, we find that neither the Plaintiff nor the Defendant has submitted any video evidence in this case, including any which might corroborate Plaintiff's claim. Specifically, in his Deposition, Plaintiff stated (Doc. 41-8, Exhibit "G", pp. 44-45):

> A: You know they have video footage of it, right, this night?
> Q: Who has the video footage of it?
> A: They had it in the discovery.
> Q: Okay. Who?
> A: The DA and, you know, the prosecutor and all of them.
> Q: Have you watched the–
> A: No, I haven't watched it. But I mean, they claim they had video footage, which there was a video running that night. So more than likely, they probably do have it. I'm not sure if they have it now. I'm not –
> Q: Okay. And what's your understanding as to whose video it was? Was it video taken by the police? Was it video taken by the–
> A: The bar.
> Q: The bar?
> A: Right. It was videotaped by the bar. They video camera everything in that bar.

It was the Plaintiff, therefore, who raised the issue of the video evidence. Presumably, if such video did exist, and did depict the incident as Plaintiff describes, he would have submitted, or at least made an attempt to discover, such footage as evidence. Plaintiff did not, however, submit such evidence, nor did he represent in any way that he attempted to obtain such video footage in discovery. Therefore, we find that there is no evidence to substantiate Plaintiff's excessive force claim in this case besides Plaintiff's deposition testimony. Plaintiff goes on to restate his claim, along with his injuries in his Brief, but does not provide or refer to any further evidence to support his claim. In fact, to date, Plaintiff has not submitted any evidence or exhibits whatsoever to support the factual allegations in his Complaint. We find, therefore, that Plaintiff has failed to establish that any unreasonable or excessive force was used on him by Defendant Culp at the time of his arrest or thereafter. We find that Defendant's overwhelming evidence shows that Defendant Culp did not kick Plaintiff in the face as Plaintiff lay on the floor in the Tavern with his hands cuffed behind his back.

Thus, we will recommend that Defendant Culp's Motion for Summary Judgment (Doc. 41) be granted with respect to Plaintiff's remaining Fourth Amendment excessive force claim against, as Plaintiff has failed to submit sufficient evidence to establish a genuine issue of materail fact regarding his claim. Nor has Plaintiff sufficiently contested the abundance of evidence submitted by the Defendant.

## VI. RECOMMENDATION.

Based on the discussion above, it is respectfully recommend that Defendant's Motion for Summary Judgment (**Doc. 41**) be granted. It also recommended that Judgment be entered in favor of Defendant Culp and against Plaintiff Brown. Further, it is recommended that the Court close this case.

   s/ Thomas M. Blewitt  
**THOMAS M. BLEWITT**  
**United States Magistrate Judge**

**Dated: July 8, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| LEON LATIF BROWN, | : | CIVIL ACTION NO. **1:CV-11-1734** |
|---|---|---|
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| CRAIG A. CULP, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 8, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**


**Dated: July 8, 2013**